UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAURA C. o/b/o J.J.L.,

                              Plaintiff,

v.                                                                             5:18-CV-0065(TWD)

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                              Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINSKY LAW GROUP<br>For Plaintiff<br>300 S. State Street<br>Suite 420<br>Syracuse, NY 13202 | HOWARD D. OLINSKY, ESQ.<br>MELISSA DELGUERCIO, ESQ. |
| HON. GRANT JAQUITH<br>United States Attorney<br>For Defendant<br>100 S. Clinton St.<br>PO Box 7198<br>Syracuse, NY 13261-7198 | JAMES DESIR, ESQ.<br>Special Assistant |

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **ORDER**

     Presently before the Court in this action, in which Plaintiff seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

those motions on March 4, 2019, during a telephone conference at which a court reporter was present. At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found the Commissioner's determination resulted from the application of proper legal principles and was supported by substantial evidence, and I provided further detail regarding my reasoning and addressing the specific issues raised by the Plaintiff in her appeal.

After due deliberation, and based up the Court's oral bench decision, which has been transcribed, is attached to this Order and is incorporated in its entirety by reference herein, it is hereby,

ORDERED, as follows:

(1) Defendant's motion for judgment on the pleadings is **GRANTED**; Plaintiff's motion for judgment on the pleadings is **DENIED**;

(2) The Acting Commissioner's determination that Plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is **AFFIRMED**; and

(3) The Clerk is directed to enter judgment, based upon this determination, dismissing Plaintiff's complaint in its entirety.

SO ORDERED.

Dated: March 7, 2019
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LAURA C., on behalf of J.J.L.,

                                        Plaintiff,

-v-                                     5:18-CV-65

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                                        Defendant.
------------------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE THERESE WILEY DANCKS**
March 4, 2019
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    OLINSKY LAW GROUP
    300 South State Street
    Suite 420
    Syracuse, New York 13202
    BY: **MELISSA A. DELGUERCIO, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    26 Federal Plaza
    Room 3904
    New York, New York 10278
    BY: **JAMES DESIR, ESQ.**


*Hannah F. Cavanaugh, RPR, CSR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1    (In chambers, counsel present by telephone. Time
2 noted: 3:27 p.m.)
3    THE COURT: So I have before me a request for
4 judicial review of an adverse determination by the Acting
5 Commissioner under 42, United States Code, Section 405(g).
6    The background is as follows: Plaintiff protectively
7 filed an application for Social Security Income benefits on
8 behalf of her daughter, J.J.L. The infant plaintiff was born in
9 June of 2005 and is currently 13 years old. She was 10 years
10 old at the time of the application in May of 2014 and 11 years
11 old at the time of the Administrative Law Judge's decision in
12 January of 2017.
13    In her application for benefits, she indicated she
14 suffers from attention deficit hyperactivity disorder, or ADHD.
15 The child has generally treated with St. Joseph's Family
16 Medicine, Syracuse Community Health Center, and Hutchings
17 Psychiatric Center. She's been evaluated at St. Joseph's
18 Comprehensive Psychiatric Emergency Program, or CPEP, and
19 McMahon Ryan Child Advocacy Center, as well as Upstate
20 University Golisano Children's Hospital.
21    She attends school in the Syracuse City School
22 District. In her early childhood years, she was evaluated
23 psychologically, physically, and occupationally and provided
24 pre-school services. She has been prescribed Ritalin and other
25 medications for ADHD off and on during the relevant time period,

but has not always been able to take them as prescribed.  She attends school, reads, watches TV, uses a computer, applications on smart devices, plays games, and plays with friends and siblings, although she does not always get along with them.

Procedurally, plaintiff's application for SSI benefits was initially denied on August 26, 2014.  She alleged an onset date of disability beginning September 15, 2010.  A hearing was conducted by ALJ Bruce Fein on October 25, 2016, wherein plaintiff was represented by a licensed representative from her attorney's office.  Both plaintiff's mother and the infant plaintiff testified.

ALJ Fein issued a decision on January 12, 2017, finding that plaintiff was not disabled at the relevant times.  The Social Security Administration made that a final determination of the agency by denying plaintiff's request for a review on November 17, 2017.  This appeal ensued in a timely fashion.

In his decision, the ALJ applied the three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled.  Initially, the ALJ noted J.J.L. was born in 2005 and was therefore a school-aged child on the date of her application and at the time of the decision.

At step one, the ALJ found J.J.L. had not engaged in substantial gainful activity at any time relevant to his decision.  At step two, the ALJ found J.J.L. had the following

severe impairment, ADHD.  At step three, the ALJ found J.J.L. did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR, Part 404, Subpart P, Appendix 1, also known as the listings, and the ALJ specifically considered the relevant child mental disorders.

In making this determination, the ALJ considered the child's functioning in terms of the six domains; one, acquiring and using information; two, attending and completing tasks; three, interacting and relating to others; four, moving about and manipulating objects; five, caring for herself; and six, health and physical wellbeing.  A claimant must have marked or higher limitations in two or more of the domains to functionally equal a listed impairment and be found disabled.

Here, the ALJ found what appears to be a marked limitation for J.J.L. in the domain of the acquiring and using information.  The decision as written is somewhat confusing in that domain, but the Commissioner has conceded that the plaintiff has a marked limitation in that domain.  The ALJ also found that the child had a less than marked limitation in the other five domains and therefore concluded that J.J.L. was not disabled.

I've reviewed the record carefully and in light of arguments of counsel and what counsel have presented in their briefs, I've applied the requisite deferential standard, which

1  requires me to determine whether proper legal principles were
2  applied and whether the result is supported by substantial
3  evidence.
4          When reviewing a child's impairments for functional
5  equivalence, adjudicators must consider all of the relevant
6  evidence and employ a whole child approach.  All of the relevant
7  evidence includes objective medical evidence and other relevant
8  evidence from medical sources; information from other sources
9  such as school teachers, family members, or friends; the infant
10 plaintiff's statements, including statements from the parents or
11 other caregivers; and any other relevant evidence in the case
12 record, including how the plaintiff functions over time and in
13 all settings such as home, school, and in the community.
14         The whole child approach requires the ALJ to consider
15 a child's everyday activities, determine all domains involved in
16 performing them, consider whether that child's medically
17 determinable impairment accounts for limitations in activities,
18 and determine to what degree such impairment limits that child's
19 ability to function age appropriately in each domain.
20         Plaintiff argues the record supports a finding that
21 J.J.L. had a marked limitation in the domain of attending and
22 completing tasks and therefore should have been found disabled
23 because she would have marked limitations in two of the domains
24 as required under the regulations.
25         In the domain of attending and completing tasks, the

1  ALJ is required to consider how well the child is able to focus
2  and maintain her attention and how well she begins, carries
3  through, and completes her activities.  The ALJ is also required
4  to consider the pace at which the child performs her activities
5  and the ease with which she changes them.  School-aged children
6  such as J.J.L. should be able to change routines without
7  distraction, stay on task when appropriate, and be able to
8  complete a transition task without extra reminders and
9  accommodations.
10            Plaintiff's argument that J.J.L. had a marked
11 limitation in the domain of attending and completing tasks is
12 based upon the applicability of the so-called treating physician
13 rule.  She contends the ALJ improperly weighed the opinion
14 evidence and did not provide adequate reasoning as to why more
15 weight was given to the agency's psychiatrists regarding
16 J.J.L.'s limitations than the weight given to her treating
17 physician and teacher.
18            As we all know, the determination of a plaintiff's
19 disability is a legal determination reserved to the
20 Commissioner.  I've done a thorough and searching review of the
21 record and find that the ALJ properly assessed the medical
22 evidence, the school evidence, and all other evidence of record,
23 and the substance of the treating physician rule was properly
24 followed by the ALJ.
25            I also find the teacher's opinion was properly

evaluated. A treating physician's opinion is given controlling weight if it is well supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence of record. As noted, the plaintiff specifically argues that the ALJ erred in according inadequate weight to the opinion of Dr. Allen, one of the providers who treated infant plaintiff at Hutchings Psychiatric Center, and in not giving adequate weight to the opinion of the teacher, Ms. Brother.

Turning to Dr. Allen first, the ALJ discussed Dr. Allen's opinion that J.J.L. had marked limitations in attending and completing tasks, however, he gave the opinion little weight, noting that it is not supported by the record as a whole, including examinations of the child at Hutchings by Dr. Allen and Dr. Chandra, a psychiatric intern there.

On initial exam by Dr. Allen on April 7, 2014, the child was found to be pleasant and cooperative and made good eye contact. She conversed easily and her speech was normal. While she was fidgety and distracted at times and exhibited some impulsive behavior, her mood was good, her affect bright and reactive, she was alert and oriented, her thought processes were logical and organized, and her insight was fair. She was prescribed Ritalin and the record shows the medication improved her condition overall.

The record from Hutchings also shows the infant

plaintiff had counseling sessions and possibly one other medical management appointment with Dr. Allen through the end of 2014, but was then discharged in March of 2015 without further medication management due to inconsistent attendance and no treatment in the preceding three months.

In January of 2016, the child was screened again at Hutchings, this time by Dr. Chandra, who noted the child to be cooperative with normal speech and an okay mood. Again, the child's thought processes were logical and clear, and her insight and judgment were intact. Ritalin was restarted and the child showed remarkable improvement with focus and attention, and her mental status exams were thereafter essentially normal through and including May of 2016, although the dose of Ritalin was increased then.

The ALJ also relied on the results of a mental status examination administered by Dr. Shapiro, completed in October of 2015, which revealed the child had intact attention and concentration skills, as well as intact memory skills. Dr. Shapiro also opined that the child had mild limitations in concentration and attention, and no limits in the ability to learn new tasks. Dr. Shapiro also found no limitations in understanding and following simple instructions or performing simple tasks, as well as age appropriate complex tasks.

Although the ALJ found somewhat greater limitations in the domain of attending and completing tasks than Dr.

1  Shapiro's mild finding, he gave Dr. Shapiro's opinion great
2  weight since she examined the infant plaintiff, and her opinions
3  were generally supported by the record.
4          Part of that record includes the records of St.
5  Joseph's Hospital.  When the child was sent to St. Joseph's CPEP
6  for behavioral problems at school in October of 2015, the child
7  was cooperative and pleasant during the exam.  Although her
8  concentration and attention were poor, it was noted she had not
9  had Ritalin since December of 2014 and that following up with
10 her provider was necessary.
11         The child was prescribed Concerta at Syracuse
12 Community Health Center in the fall of 2015, but the treatment
13 note indicates she was not taking it due to insurance issues.
14 Notably, throughout office visits for various problems in 2015
15 and 2016 at Syracuse Community Health Center, normal psychiatric
16 exams are consistently documented, although a history of ADHD is
17 also noted.
18         Treatment notes from Upstate University Hospital show
19 in 2014 that the child's ADHD symptoms were up and down
20 depending on her medication and that although she was behind in
21 her class work, she was doing okay academically.  In 2015 and
22 2016, psychiatric and behavioral status exams at Upstate were
23 normal and negative for confusion, agitation, and behavioral
24 problems, although her ADHD was again noted.
25         Much of the child's school records also support a

less than marked finding in the domain of attending and completing tasks. For the academic year 2013 to 2014, she had significant improvement in personal development and work habits, including following rules and directions and completing class work on time.

In the 2014 to 2015 academic year, records show she had difficulty in Math and English Language Arts, or ELA, but her efforts were satisfactory in those and all other subjects, except Music. She made fair progress that year and moved up to fifth grade.

In the 2015 to 2016 academic year, she continued to struggle with Math and ELA, and her efforts in those subjects were inconsistent. Efforts in her other subjects for the most part, and for most of the marking periods, were satisfactory. While she struggled to improve academically and behaviorally, she was advanced to the sixth grade.

While her school behavior in the 2015/2016 academic year reflected problems, the majority of the problems occurred when she was not taking Ritalin. Both the child's mother and the child acknowledged that her focus and attention improved on Ritalin. The child also acknowledged she did better once the switch in her teacher team was made and she was put in a smaller group.

As for her activities of daily living, the record shows the child can do a range of activities that require

attention and concentration.  She takes care of her personal needs.  She likes dressing up.  She reads and watches TV.  She uses a computer and applications on smart devices and she plays games.

Based on the above, I find that the ALJ properly gave good reasons for giving little weight to Dr. Allen's opinion concerning a marked limitation for J.J.L. in attending and completing tasks.  Similarly, I find that the ALJ properly assessed the child's third grade teacher's report.

The teacher, Ms. Brother, provided responses to a questionnaire, which included the opinion that the child has some problems functioning in the domain of attending and completing tasks.  Ms. Brother noted that the child had obvious problems in three areas assessed, serious problems in two areas assessed, and very serious problems in two areas assessed in this domain, but no problems or only slight problems in a total of six other areas assessed.  However, a teacher's assessment of serious or very serious problems in the domain of attending and completing tasks may not indicate marked limitations in light of other medical evidence in the record.

In the child's case, the ALJ considered the evidence provided by Ms. Brother in light of the entire record, including the medical examination and opinion of Dr. Shapiro, and medical records from Syracuse Community Health Center, St. Joseph's, Upstate University Hospital, and Hutchings, and Dr. Allen's

report, which I've already discussed.  I also find that the ALJ considered the child's functions and limitations in a variety of settings as required.

As discussed above, the ALJ relied on medical examinations, school records, and the testimony of the child and her mother, all of which describe and provide information about J.J.L.'s behavior in a multitude of settings, including one-on-one, at home, in school, and in the public.  For example, the child's mother testified that at home, the child will do chores as asked or if there is a reward, although she sometimes needs to be asked multiple times.  She also testified that J.J.L. can do activities and things on her own.

In light of the foregoing and considering the entire record and the ALJ's determination, I find the ALJ applied the appropriate standards of review in assessing J.J.L.'s functioning domain of attending and completing tasks.  The ALJ set forth good reasons for giving reduced weight to the opinions of Dr. Allen and the teacher, Ms. Brother, and remand on this basis is not required.

Accordingly, I conclude that the record provides substantial evidence for the ALJ's determination that the infant plaintiff had a less than marked limitation in attending and completing tasks, and that the correct legal standards were applied, so I grant the defendant's motion on the pleadings and will enter a judgement dismissing plaintiff's complaint in this

```
1   action accordingly.  A copy of the transcript of my decision
2   will be attached to the order should any appeal be taken from my
3   determination.
4              (Time noted:  3:44 p.m.)
```

CERTIFICATE OF OFFICIAL REPORTER

I, HANNAH F. CAVANAUGH, RPR, CSR, Official U.S. Court Reporter, in and for the United States District Court for the Northern District of New York, DO HEREBY CERTIFY that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 6th day of March, 2019.

X_____

HANNAH F. CAVANAUGH, RPR, CSR

Official U.S. Court Reporter